## BARROW, trustee, *v.* SMITH *et al.*

When one makes a money subscription to a corporation, to be expended in the development of its property in certain named ways, and by the contract is to receive therefor "stock, bonds, or other security," as may be determined by the board of directors, and the board subsequently declares that the subscriber, by virtue of scrip issued to him on the payment of such subscription, is entitled to the bonds of the company to the extent of the sum paid in, and that such development fund paid in "is hereby recognized as an indebtedness for which the holder is entitled at once to the principal and interest in money, except where he takes bonds in lieu of money," such subscriber, to the extent of the money paid in, is a creditor of the company, and the legal effect of the contract under this action of the board of directors is that the unpaid portion of any subscription, so made, is cancelled, where the subscriber does not elect to take therefor the bonds of the company.

Argued December 2, 1899. — Decided January 31, 1900.

Intervention.    Before Judge Candler.    Fulton superior court.    March term, 1899.

*Barrow & Osborne,* for plaintiff in error.
*Hoke Smith & H. C. Peeples,* contra.

LITTLE, J.    Hoke Smith applied to the judge of the superior court of Fulton county for an order directing Joel Hurt, who was receiver, to pay him out of the funds in his hands the sum of five thousand dollars.    The receiver resisted the application to the extent of asking the court to reduce the amount to be paid to petitioner, by deducting a claim which he, as receiver, held against him.    Mr. Barrow, as trustee, prayed the court that he might intervene in the proceedings, which was allowed, and he exhibited his petition praying that the amount of the claim which the defendant in error asked to be paid should be reduced by setting off against it the same indebtedness which the receiver had set up, which action, the intervenor showed, would be beneficial to the estate he represented.    At the hearing it was agreed between the parties that all the allegations in the petition of Mr. Smith, the allegations in the answer of the receiver, and the allegations in the petition of the trustee were true and were to be taken as proved.    As we collect the allegations from these pleadings they are as follows:    Mr. Smith

sets out, that in the case of *Moore, administrator,* v. *The Suwanee Canal Company,* pending in Fulton superior court, he was, by a decree rendered on the 11th day of January, 1899, awarded five thousand dollars as attorney's fees for representing the defendant, and the receiver was directed to pay the same out of any funds in his possession and out of the proceeds of the sale of the property of the defendant, prior to any other claim or lien except other claims for attorney's fees and court costs allowed by the same decree; that a sale of the property was made and confirmed by the court, and the receiver has in his possession sufficient funds to pay the allowance made, but he declines to do so unless the petitioner will allow, as a credit on the same, certain charges against petitioner which appear on the books of the canal company. Petitioner alleges that he is not indebted to the canal company in any sum, but on the contrary, in addition to the five thousand dollars allowed him as fees, the company is indebted to him for borrowed money in the sum of ten thousand dollars, besides other sums as fees for professional services. The receiver averred, that on June 9, 1891, the petitioner entered into an agreement with the Suwanee Canal Company and certain stockholders of said company, whereby, for sufficient consideration, he undertook and promised to pay to the canal company ten thousand dollars in installments, as the same might be called for by the board of directors, which agreement was and is binding on petitioner; that he failed to pay of this sum two installments which were called for; and that he is now indebted on that contract two thousand dollars, besides interest, which debt and other claims due to the company are in the hands of the receiver, by order of the court, for collection; and he asks to set off this indebtedness of the petitioner against the allowance made for fees. The answer set up the contract referred to, the material part of which is as follows:

"In consideration of these presents, it is agreed that the undersigned will pay to said company the amounts set opposite their names, in installments, as the same may be called for by the board of directors of said company, receiving therefor stock, bonds, or other security, as may be determined by said board. The money thus raised to be expended in the development of

the property of the company, acquiring right of way for canal, and contiguous lands, as the directors may determine, and shall be called for only as required for the purposes aforesaid. This agreement shall be binding upon the subscribers whether they continue to be holders of the stock or not, but shall not be binding until signed by seventy-five per cent., in amount, of all the stockholders of said company. . .

[Signed] Hoke Smith, June 9, 1891, 10,000.00."

It was not contested that the whole amount had been called for in installments, nor that the agreement had been signed by seventy-five per cent. of the stockholders of the company. The original petition was amended by alleging that the following action was had by the directors of .the company: On March 19, 1894, the directors were authorized to sell the first mort- gage bonds of the company to stockholders at ninety cents on the dollar, etc., and the following resolution was also passed: "Resolved, second: That the scrip issued for payments to the development fund, with interest thereon, be accepted at par in satisfaction for subscriptions to the issue of bonds, but that the bonds thus purchased be not delivered nor the scrip canceled until such time as may be determined by the president and di- rectors. . ." On February 3, 1897, the following preamble and resolutions were adopted by the board: "Whereas sub- scriptions have been made by a number of holders of the de- velopment fund scrip of this company for the bonds of the com- pany, in pursuance of the resolutions passed at the meeting of the stockholders held March 19, 1894, and whereas a tender has been made of said scrip in payment of said bonds, in pur- suance of the terms of said resolution; therefore, be it resolved, first, that the board of directors of this company hereby recog- nize the right of said holders of development fund scrip to the immediate possession of said bonds, and the possession of said bonds to said amount by the Farmers Loan and Trust Com- pany shall be recognized from this day forward as being for the benefit of said scrip-holders to the amount of the principal and interest of their scrip, according to the terms of the resolutions passed at the stockholders' meeting on March 19, 1894. Re- solved, second, that the treasurer of this company shall from

time to time procure said bonds to be actually delivered to said scrip-holders as said scrip-holders may desire. Resolved, third, that from and after this day all development fund scrip is hereby recognized as an indebtedness for which the holder is entitled at once to the principal and interest in money, except where he takes in lieu of money the bonds provided for by the resolutions of the stockholders' meeting above referred to, and any such holder who has not already subscribed for and demanded bonds shall have the right at any time hereafter to do so, with all the privileges covered by this resolution." Petitioner alleges that said bonds were never delivered, and that the company, on said loan and on purchases which he has made of scrip issued to other parties, owes him over ten thousand dollars.

The intervenor alleges in his petition the indebtedness of the petitioner to the canal company under the contract as set out by the receiver, and on information charges that a contract was made by petitioner and the canal company, by which the former was employed as attorney for the company, and it was agreed that his indebtedness to the company should be set off against his compensation as attorney, and that petitioner accepted employment under those terms, and the only thing left open at that time was the amount of compensation to be paid the petitioner; that this was subsequently agreed on at the sum of five thousand dollars, to cover his entire services for the company, including all its litigation; that petitioner has no connection with the company as its attorney other than under this contract; that petitioner was never appointed by the court to represent the company, nor his compensation fixed by the court, but that the court allowed him the sum of five thousand dollars because it had been agreed between petitioner and his client that he should receive that amount, and the client consented to the allowance, and the action of the court was based on the idea that the company was provided with counsel by contract; that the claim against the petitioner is the property of the trust estate which he, the intervenor, represents, and that he as trustee was the purchaser of the property of the canal company at the sale made by the receiver; that the debts due

the canal company were reserved from sale and directed to be collected by the receiver, and, after paying expenses, are to be paid over to the purchaser of the property which was sold, and that the trust estate is entitled to have the indebtedness due by the petitioner to the canal company set off against his claim for compensation as attorney; and he prays accordingly. To the petition of the intervenor was attached as an exhibit an extract from the original decree granted January 11, 1899, as follows: " The fees allowed in item three of this decree are allowed by consent and agreement between the parties to this cause, and are only allowed because the party and parties out of whom they come, and from the proceeds of whose property they are to be paid, have agreed to them, and request their allowance by the court. " And also this extract: " It appearing to the court that the appointment of a receiver will remove all the assets of the defendant from its custody, and that the best management of the affairs of the company require the assistance in this litigation of the counsel for the defendant, it is ordered that the fees for services in this litigation of the attorneys for the defendant, Hoke Smith & H. C. Peeples, be made a charge upon the assets of the company, in the hands of the receiver, the amount of such charges to be fixed hereafter."

By further amendment of the original petition, Mr. Smith admitted the execution of the contract set out, alleged that the same was an agreement to loan money, and, the canal company having become insolvent, there was no means for the return of the money if loaned, and he denied, therefore, any liability under the contract. He denied that any contract was ever made between himself and the company, fixing the amount of fees to be paid and as to how such fees should be paid. He denied that they were to be settled by any indebtedness due by him to the company. He alleged that he never had any agreement with the company as to what he was to be paid for appearing in the litigation filed by the administrator against the company; that the canal company owed him for professional services rendered before the filing of the bill, and such sum was in addition to the five thousand dollars allowed him as fees in that case. He sets out that his connection with

that litigation occurred under the following circumstances: General Jackson was president of the canal company and the holder of a preferred lien against it, the lien being for an amount of money over one hundred thousand dollars, which General Jackson had advanced for the further management of the company. The original bill asking the appointment of a receiver was filed by the administrator of the estate of Henry Jackson. A large number of the stockholders, for satisfactory reasons, employed petitioner to represent the interests of the canal company in the litigation, with an understanding that they should not be liable to him for fees if an arrangement could be made by which his fees should be paid out of the fund in court. An agreement was reached between the plaintiff in the bill, the representatives of Gen. Jackson, and petitioner, that the latter should appear and represent the interest of the company, and that his fee should be five thousand dollars, and was to be a charge on the property of the company, superior to the lien of Gen. Jackson. The latter came into the litigation for the purpose of foreclosing his lien, and subsequently transferred the same to himself as trustee of named beneficiaries, and his successor in trust, Mr. Barrow, thus came into possession of the property. Attached to this amendment is an extract from the decree rendered, as follows: "3. It is further considered, ordered, adjudged, and decreed that Joel Hurt as receiver, in full for his services for such, and for conducting the sale of the property of the defendant, making deeds and delivery of the property, shall receive the sum of $7,500.00; that King & Anderson, as plaintiff's attorneys, shall receive the sum of $5,000.00, that Hoke Smith, as defendant's attorney, shall receive the sum of $5,000.00, that Burton Smith, as attorney for John W. Weed and Frank Coxe, shall receive the sum of $1,000.00, that Glenn, Slaton & Phillips, as attorneys for intervenors represented by them, shall receive the sum of $500.00; that the Farmers Loan and Trust Company, trustee, and King & Spalding, and Turner, McClure & Rolston, as attorneys for the Farmers Loan and Trust Company, trustee, shall receive the sum of fifteen hundred dollars, and the officers of the court, for costs in this case, shall receive the sum of . . . . .

The above sums of money to be paid in full for fees as attorneys and receiver, respectively. The above amounts herein decreed in this clause for receiver's and attorney's fees and costs, as above stated, shall be paid, first, from the proceeds of the sale of the property of said defendant, the Suwanee Canal Company, and are preferred over the first preference lien given in the second clause of this decree to the said Pope Barrow as trustee."

After considering the pleadings and hearing argument, the judge ordered the receiver to pay to the defendant in error the sum of five thousand dollars, with interest from the date of the rendition of the original decree; and to this order and judgment the plaintiff in error excepted. Under the view which we take of this case, it is not necessary to discuss or decide many of the interesting points made in the briefs of counsel representing the parties. The question is, whether an alleged indebtedness on the part of the defendant in error to the canal company should be set off against an allowance of counsel fees, made to him by proper order of the court, for the representation of the corporation in the litigation which resulted in the appointment of a receiver and the sale of the property of the corporation, under the facts as they appear in the pleadings. The contract under which it is shown that this alleged indebtedness accrued can not, in our opinion, be held to be one of subscription to the capital stock of the corporation. It will be noted from the terms of the contract that the plaintiff undertook for a specific purpose—that of the development of the property of the corporation, acquiring right of way for the canal, and the purchase of contiguous lands—to pay to the company the sum of ten thousand dollars, and for the sum so paid he was to be entitled to receive stock, that is to say, shares of the capital stock of the company, or the bonds of the company, or other security, as might be determined by the board of directors. If the board of directors had, in pursuance of this contract, declared that shares of the capital stock should be issued for the payments made, then there is no doubt that the defendant in error would have been a subscriber to the capital stock of the company. But, as executed, the contract was to a certain extent

indeterminate, and the legal status of the parties to it was made to depend upon the future action of the [board of directors. This action, as appears by the record, was had by the directors on March 19, 1894, and February 3, 1897. At their meeting on the first-named date, it was resolved that the scrip issued for payments to the development fund, with accrued interest, be accepted at par in satisfaction for subscriptions to the issue of bonds, and, by the action of the board held on the last-named date, it was resolved that the board of directors recognized the right of the holders of development-fund scrip to the immediate possession of bonds of the company, for the issue of which authority had been given by a previous resolution; and at the same time it was resolved that the development-fund scrip was recognized as an indebtedness for which the holder is entitled at once to principal and interest in money, except where he takes, in lieu of money, the bonds provided for by the resolution of the stockholders' meeting in March, 1894.

Taking, then, the original contract which expressly provided that the board of directors might thereafter determine what stock, bonds, or other securities of the company should be given to subscribers to the development fund, and the action had by the board of directors under the terms of that contract, it appears that subscribers who had contributed to the development fund should have the amount subscribed and paid in returned to them in money, unless such subscriber preferred to take, in lieu thereof, bonds of the company. It is not disputed that the defendant in error, of the sum subscribed by him to the development fund, had paid eight thousand dollars, leaving to be paid the sum of two thousand dollars; and it would seem, from a proper interpretation of the contract and the subsequent action of the board of directors, that he would be entitled to have the money which he had paid into the development fund returned to him with interest thereon, unless he preferred to take bonds of the company for that sum. The record does not disclose any receipt of bonds by him, and, in the absence of his election so to take, he was entitled to have from the company eight thousand dollars in money, with interest. He was, therefore, under the terms of this contract as executed by the

company, a creditor of the company to the extent of eight thousand dollars besides interest. But the same contract obligated him to pay in the sum of ten thousand dollars. He had, therefore, not complied with his obligation to the extent of two thousand dollars, and to this extent he would have been a debtor to the company but for the fact that when the debt was enforced and the money collected, the right immediately inured to the subscriber to have it paid back to him. In view of the action of the board of directors declaring that the holder of the development-fund scrip was entitled to be paid back in money all that he paid on his subscription to that fund, it would seem, as a matter of law, that the indebtedness was canceled. This view of the question disposes of the case, and dispenses with any ruling as to the matter of set-off, which, as we think, is not involved under the terms of the original contract and the subsequent action of the board of directors.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., and Cobb, J., who were disqualified.*